UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABBOUDS' McDONALD'S, LLC., a
Washington corporation,

           Plaintiff(s),

v.

McDONALD'S CORPORATION, a
Delaware corporation,

           Defendant(s).

No. CV04-1895P

ORDER GRANTING DEFENDANT
MCDONALD'S MOTIONS FOR
SUMMARY JUDGMENT ON
PLAINTIFF'S ANTITRUST,
CONTRACT, AND WCPA CLAIMS

This matter comes before the Court on Defendant McDonald's Corporation's ("McDonald's") motions for summary judgment on Plaintiff's Antitrust, Contract, Washington Franchise Investment Protection Act ("FIPA"), and Washington Consumer Protection Act ("WCPA") claims. (Dkt. Nos. 38, 40-42, & 48). In its omnibus Response to Defendant's motions, Plaintiff Abboud's McDonalds ("Abboud's"), a McDonald's franchisee, voluntarily dismisses its FIPA claim, but argues that triable issues of material fact remain on the rest of the claims. (Dkt. No. 49). Claude Abboud, the owner of the Abboud's McDonald's franchises claims that McDonald's acted illegally when it used its contractual right of first refusal to buy several McDonald's restaurants in the Seattle area on which Mr. Abboud had submitted the highest bid. Abboud's alleges that McDonald's used its right of first refusal in an unfair manner to deny Abboud's the opportunity to expand and as retaliation for Mr. Abboud's outspoken demeanor. Abboud's further alleges that McDonald's exercise of its right of first refusal was done in furtherance of an illegal conspiracy to eliminate

ORDER GRANTING SUMMARY JUDGMENT- 1

competing bids for the restaurants. Abboud's claims that this conspiracy constitutes a violation of section 1 of the Sherman Act, is a breach of the duty of good faith and fair dealing present in all contracts in Washington, and is a violation of the Washington Consumer Protection Act ("WCPA"). Defendant denies all of Plaintiff's claims and asks this Court to grant summary judgment as to all claims and dismiss the entire case. The Court finds that Plaintiff has not demonstrated that it has anti-trust standing, that there are no contract provisions on which Plaintiff can base its allegations that McDonald's breached its contractual duty of good faith and fair dealing to Abboud's, and that Plaintiff's dispute with McDonald's does not sufficiently affect the public interest to raise a WCPA claim for trial. For this reason, the Court GRANTS Defendant's request for summary judgment as to all claims and hereby DISMISSES this case with prejudice.

## BACKGROUND

In late Spring 2004 Fred Schultz, an owner/operator of fifteen McDonald's franchises in the Seattle area, died. His estate, which was being administered by attorney Stephen Hansen, put twelve of these stores up for bid. On May 4, 2004, Mr. Hansen consulted with Cody Teets, the McDonald's Vice President for the Seattle area, in order to see which local McDonald's franchisees were eligible to submit bids because they met McDonald's national standards for expansion. Ms. Teets identified two local franchisees, Willie Cho and Bob Comiskey, as being eligible for expansion. She also let Mr. Hansen know that McDonald's would be interested in purchasing seven of the stores for itself to be run by McOpCo, a subsidiary of McDonald's that operates franchises owned by the McDonald's Corporation. (Hansen Dep., Def's Ex. 27, 18-26).

Both parties agree that at the time of these initial discussions between McDonald's and the Schultz estate, the Abboud's organization had not been cleared by McDonald's as ready for expansion. Mr. Abboud had contacted Mr. Hansen early regarding the stores and Mr. Hansen asked Ms. Teets specifically about Mr. Abboud's status as a franchisee at the May 4th meeting. She told him that Mr. Abboud was not eligible at that time for expansion (Id. at 22). After this meeting, Ms. Teets spoke with Mr. Abboud and represented to him that he would not be able to bid on the Schultz

ORDER GRANTING SUMMARY JUDGMENT- 2

stores. (Abboud Decl., Pl's Ex. 2, ¶ 2). Mr. Hansen and Ms. Teets met again on May 18th and on June 2, 2004 to discuss the progress of the sale of the Schultz stores. At the June 2nd meeting, Mr. Hansen informed Ms. Teets that he was more interested in getting a high price for the Schultz stores than he was in achieving a quick sale. (Id. at 34). On June 3rd or June 4, 2004, Ms. Teets spoke with Mr. Abboud and told him that he could talk to Mr. Hansen and bid on some stores because she did not believe that they would sell before July 2, 2004, when Mr. Abboud was scheduled to have his next review. Ms. Teets believed that Abboud's would be eligible for expansion at that time, but warned Mr. Abboud that McDonald's would not support him for expansion by more than two or three new stores. (Teets Decl., Pl's Ex. 1, at 3-4).

Abboud's decided to bid on all twelve stores. The stores were sold in two groups–a group of seven, which was sold first, and a group of five. McDonald's submitted the highest bids on all seven stores in the first group. (Compl. at 5, ln. 20). The second set of five stores had several bidders: Willie Cho bid on three, Bob Comiskey bid on the other two, and Abboud's bid on all five. In this round of bidding, Mr. Abboud submitted the highest bids on all five stores. At this point, McDonald's made the decision to exercise its contractual right of first refusal, which is included in every franchise agreement it executes and reads:

> Franchisee or Franchisee's representative shall, at least twenty (20) days prior to the proposed effective date, give McDonald's written notice of intent to sell or otherwise transfer this Franchise pursuant to paragraph 15(d). The notice shall set forth the name and address of the proposed purchaser and all the terms and conditions of any offer. McDonald's shall have the first option to purchase the Restaurant by giving written notice to Franchisee of its intention to purchase on the same terms as the offer within ten (10) days following McDonald's receipt of such notice. . . (Def's Ex. 3, p. 7, 15(c)).

McDonald's bought the stores from the Schultz estate for the price that Mr. Abboud had offered. Mr. Hansen testified that he sold the stores, "for the highest prices that I possibly could achieve under the circumstances. . .it's the largest price for stores that the northwest region has ever had." (Hansen Decl., Def's Ex. 27, pp. 57-58). McDonald's offered two of the stores to the Abboud's organization. Claude Abboud turned down this offer, asking instead for seven of the stores. McDonald's declined

ORDER GRANTING SUMMARY JUDGMENT- 3

this counteroffer and decided to keep all of the stores that it had bought from the Schultz estate and to run them through McOpCo.

Abboud's claims that McDonald's tried to exclude Abboud's from its original conspiracy to limit its competition on the first seven stores and to have Willie Cho and Bob Comiskey buy the last five stores. However, neither the testimony of Mr.Cho nor of Mr. Comiskey supports the idea that a conspiracy existed. (Comiskey Dep., Pl's Ex. 4, at 22-25; Cho Dep., Def's Ex. 33 at 30-37). Abboud's alleges that this conspiracy violated section one of the Sherman Act because it was designed to keep bidding on the Shultz estate stores low. This behavior, claims Abboud's, also violates the WCPA. Abboud's further alleges that McDonald's used its right of first refusal as a way to punish Claude Abboud for taking outspoken stances against McDonald's throughout his history as a McDonald's franchisee and that this discriminatory behavior violates the duty of good faith and fair dealing inherent in every contract under Washington Law. McDonald's denies these claims and asks that the Court GRANT summary judgment on all claims in its favor and DISMISS the case in its entirety.

## ANALYSIS

### I. Summary Judgment Standard:

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden,

ORDER GRANTING SUMMARY JUDGMENT- 4

the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

## II. Antitrust/Sherman Act Claim:

Plaintiff Abboud's claims that Defendant McDonald's violated section one of the Sherman Act when it conspired with franchisees Willie Cho and Bob Comiskey to limit the number of bids on the Schultz estate stores by designating who would bid on which stores, attempting to exclude Abboud's from the bidding, and promising certain stores to Mr. Cho and Mr. Comiskey. Plaintiffs claim that this type of violation is a *per se* violation of the antitrust laws.

However, Defendant McDonald's claims that it is impossible under law for franchisees and franchisors to conspire in restraint of trade because they are considered to be single economic entity. For this reason, argues Defendant, Plaintiff has no antitrust standing. Defendant's point is well-taken. Section 1 on the Sherman Act states, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. . ." 15 U.S.C. §1. As a practical matter, not every business collaboration encompassed by this broad language is illegal–instead, the courts have determined that only those combinations that "unreasonably restrain trade" and harm competition run afoul of the first section of the Sherman Act. Big Bear Lodging Assn. v. Snow Summit, Inc., 182 F. 3d 1096, 1101 (9th Cir. 1999).

In weighing whether a plaintiff has standing to proceed on an antitrust injury, a court must weigh: 1) whether the nature of the alleged injury was of the type that the antitrust laws were meant to prevent; 2) whether the injury was direct; 3) whether or not the harm is speculative in nature; 4)

ORDER GRANTING SUMMARY JUDGMENT- 5

whether there is a risk of duplicative recovery; and 5) how complex the awarding of damages is likely to be.  <u>American Ad Management, Inc. V. General Telephone Co.</u>, 190 F. 3d 1051, 1055 (9th Cir. 1999).  In making this determination, the Court must keep in mind that the antitrust laws were created to protect competition itself, and not the competitors. <u>Id.</u>  Moreover, none of these factors is dispositive, although courts generally give "great weight to the nature of the plaintiff's alleged injury." <u>Id.</u>

Here, the injury to Plaintiff was indirect because Abboud's does not allege that McDonald's actions hurt Abboud's current franchise operations, but rather, that its possibilities for expansion were stunted. For this reason, the harm alleged is also speculative in nature and the awarding of damages is likely to be complex.  Nonetheless, there does not appear to be a risk of duplicative recovery. However, the Court finds that the first and most important factor regarding the nature of the alleged injury also weighs against Plaintiffs because exclusion of franchisees from additional franchises by franchisors is not the type of injury that the antitrust laws were meant to prevent.

In the past, courts have hesitated to find antitrust standing in situations where a franchisor has allegedly injured a franchisee.  In the Ninth Circuit, a District Court in Nevada held that there could be no conspiracy in restraint of trade between Jack-in-the-Box and its franchisees because they were a "common enterprise" deemed incapable of conspiracy.  <u>Williams v. Nevada</u>, 794 F. Supp. 1026, 1030-1031 (D. Nevada 1992).
In making this determination, the Court took into account that :

> the franchisor does everything to promote a uniform, non-competitive environment between the franchises: each franchise serves substantially the same products; the product are served to the public in the same manner; the franchisor develops products and services for all franchises; the employees dress alike; the decor of each franchise is similar; the franchises are advertised as a single enterprise with a single logo; and the franchisor contracts with each franchise for exclusivity within a certain geographic area. <u>Id.</u>  at 1031.

ORDER GRANTING SUMMARY JUDGMENT- 6

Although McDonald's does not contract with its franchisees for geographic exclusivity, the rest of the factors that the <u>Williams</u> court took into account in deciding that franchisor and franchisees in that case were a common enterprise are also present in this case.  More importantly, the <u>Williams</u> court's evaluation that the control that the franchisor exercised over franchisees actually enhanced the ability of Jack-in-the-Box to compete in the larger market of fast-food restaurants and benefitted both franchisors and franchisees, as well as the competitive marketplace, also applies in this case. <u>Id</u>. at 1032.

      Abboud's makes the argument that the relevant market for this Court to look at in evaluating its injury is not the larger market of brand competition, but rather the smaller market of potential owners of McDonald's franchises.  Abboud's argues that McDonald's conspiracy with Cho and Comiskey, as well its use of its right of first refusal, has deprived the marketplace of the best-qualified owner of the Schultz estate McDonald's stores.  Abboud's also argues that the individual franchisees have economic interests that are disparate from that of McDonald's corporation.  However, a court that considered injury to Burger King franchisees because of alleged discrimination in the way Burger King treated them held that "'competition' within the [Burger King] system itself" did not constitute an antitrust injury to the plaintiff franchisees in that case.  <u>Hall v. Burger King Corporation</u>, 912 F. Supp. 1509, 1548 (S.D. Florida, 1995).  The same holds true in the case at hand.

      Because McDonald's ability to choose who operates its franchises contributes to the McDonald's brand's viability in the marketplace, the injury alleged by Abboud's from McDonald's activities is not an injury that gives rise to antitrust standing.  Further, viewing the depositions in this case and other evidence submitted in the light most favorable to Plaintiff, there is not substantial evidence to raise a question of material fact that there a conspiracy existed between Ms. Teets, Mr. Cho and Mr. Comiskey.  For these reasons, the Court GRANTS summary judgment as to Plaintiff's antitrust claims.

ORDER GRANTING SUMMARY JUDGMENT- 7

**III. Washington Consumer Protection Act (WCPA) Claim:**

Abboud's bases its WCPA claim on three separate theories. First, it alleges that McDonald's alleged bid rigging is a WCPA violation; that McDonald's discrimination between franchisees is a violation of FIPA, which under statute is considered an "unfair or deceptive act or practice" under the WCPA; and that McDonald's failed to act in good faith, also as required by FIPA. In order to demonstrate a violation of the Washington Consumer Protection Act, a plaintiff must show that the defendant engaged in an unfair or deceptive act or practice in trade or commerce that affects the public interest and that has caused an injury to plaintiff, which was caused by the defendant's illegal behavior. Nelson, 120 Wn. 2d. 382, 393, 842 P. 2d 473 (1992), citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn. 2d 778, 784-85, 719 P. 2d 531 (1986). A Plaintiff must raise an issue of material fact as to each prong of this test, in order to pass summary judgment on a WCPA claim. For the purposes of this Order, the Court assumes that Plaintiff is able to establish, based on its allegations and the evidence presented, an issue of fact as to at least one of Defendant's alleged unfair or deceptive acts or practices. Plaintiff has also shown that these alleged acts were committed in connection with trade or commerce. However, Defendant argues that this is a private dispute that does not concern the public interest.

Where a dispute is primarily a private one, a Plaintiff may still succeed on a WCPA claim if it can demonstrate that other members of the public are at risk of being injured in the same fashion. Hangman Ridge, 105 Wn. 2d. at 790. In determining whether or not a private dispute rises to this level, courts consider four additional factors, none of which are dispositive:

> 1) Were the alleged acts committed in the course of defendant's business? 2) Did defendant advertise to the public in general? 3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? 4) Did defendant and plaintiff occupy unequal bargaining positions? Id. at 790-91.

This Court previously considered on a motion for 12(b)(6) dismissal the question of whether or not Plaintiff adequately pled that its alleged injuries were of the type that could affect the public

ORDER GRANTING SUMMARY JUDGMENT- 8

interest, even though the dispute was of a private nature.  (See <u>Order Denying Defendant's 12(b)(6) Motion to Dismiss</u>, Dkt. No. 16).  Although the summary judgment inquiry is similar to the 12(b)(6) inquiry in that both require the Court to make all inferences in favor of the non-moving party, the summary judgment inquiry requires a showing of some evidence on which a Plaintiff can raise a material fact for trial, whereas the 12(b)(6) inquiry looks only to the pleadings. Fed R. Civ. P. 12(b)(6) and 56(c).  For this reason, the outcomes of these two inquiries may be different, as they are here.

In the previous Order, this Court evaluated Plaintiff's pleading and ruled that Abboud's adequately pled that McDonald's advertised to the public in general and that McDonald's actively solicited the Abboud's. (Id. at 6, ln. 1-5).  However, an examination of all the evidence on summary judgment compels a different conclusion. Plaintiff has presented no evidence that McDonald's solicits members of the public at large to become franchisees.  Rather, it appears from the testimony offered that competition is stiff for already-existing stores, so McDonald's does not need to engage in active solicitation of the public to find potential franchisees. (See <u>Comiskey Dep.</u>, p. 23, Pl's Ex. 4 at 7; <u>Abboud Dep., Vol. I</u>, p. 44-45, Def's Ex. 9 at 12).  Further, Plaintiff has submitted no evidence showing that it was actively solicited by Defendant.  Throughout Mr. Abboud's deposition, he describes himself as seeking new opportunities and as approaching various McDonald's executives about chances to move to new cities or to expand the number of stores he operates. (Def's Ex. 9). Not once does he describe being solicited by McDonald's to take on new stores or new positions of responsibility.  Because Plaintiff has not submitted any evidence showing that McDonald's solicited it or is likely to solicit other members of the public in a similar way, Abboud's has not succeeded in raising an issue of material fact as to whether or not the alleged "unfair and deceptive" acts of McDonald's affect the public interest.  For this reason the Court GRANTS summary judgment to Defendant of Plaintiff's WCPA claims.

**IV. Contract Claims—Breach of Good Faith and Fair Dealing:**

ORDER GRANTING SUMMARY JUDGMENT- 9

Abboud's claims that McDonald's breached its contract with Plaintiff by exercising its right of first refusal in bad faith when it did not allow Plaintiff to acquire the franchises on which it had submitted the winning bids. Plaintiff alleges that McDonald's behavior contradicted Ms. Teets' earlier statements giving Plaintiff clearance to bid on the franchises. Plaintiff points out that the duty of good faith is implied into all contracts under Washington law; however, this duty exists only "in relation to performance of a specific contract term." Keystone Land & Development Co. v. Xerox Corp., 152 Wn. 2d. 171, 177, 94 P. 3d 945 (2004). There is no "free-floating" duty of good-faith. Id. Defendant correctly observes that Abboud's has no right, under the parties' franchise agreement, to acquire additional franchises. Indeed, clause 28(h) of the contract provides: "[n]o future franchise or offers of franchises for additional McDonald's restaurants, other than this Franchise, have been promised to Franchisee. . ." (Def's Ex. 3, p. 13). The contract additionally provides in clause 26 that:

> [t]his Franchise. . .constitutes the entire agreement between the parties and supersedes all prior and contemporaneous, oral or written, agreements or understandings of the parties. No interpretation, change, termination, or waiver of any of the provisions hereof shall be binding upon McDonald's unless in writing signed by an officer of McDonald's. . ." (Id., p. 12).

Although Ms. Teets did give Abboud's permission to bid on the Schultz estate stores, Plaintiff has provided no evidence of a writing signed by an officer of McDonald's that Ms. Teets' statements modified Plaintiff's franchise agreement to give it the right to future franchises.

The only other clause of the Franchise agreement upon which Abboud's might hang its claim of breach of the duty of good faith and fair dealing appears in clause 15(d), which addresses the right of a franchisee to assign its franchise rights to another entity. It provides, in pertinent part, that, "Franchisee shall not sell, transfer, or assign this Franchise to any person or persons without McDonald's prior written consent. Such consent shall not be arbitrarily withheld." (Id, p. 8). Defendant points out, however, that this promise concerns the *selling* of restaurants, not the buying of them. Thus, standing to make this claim properly lies with the Schultz estate, who has not brought such a claim. Even assuming that, making all inferences in favor of Plaintiff, McDonald's did arbitrarily withhold its consent to Abboud's purchase of the Schultz estate stores, there is nothing in

ORDER GRANTING SUMMARY JUDGMENT- 10

Abboud's franchise agreements with McDonald's that gives it standing to make a claim based on this alleged behavior. Because there is no clause in Abboud's franchise agreements with McDonald's that gives it the right to purchase stores, nor has Abboud's produced evidence that the contract was modified by statements of Ms. Teets, the Court GRANTS Defendant's motion for summary judgment on this issue.

## CONCLUSION

The Court finds that Plaintiff has not demonstrated that it has anti-trust standing, that there are no contract provisions on which Plaintiff can base its allegations that McDonald's breached its contractual duty of good faith and fair dealing to Abboud's, and that Plaintiff's dispute with McDonald's does not sufficiently affect the public interest to raise a WCPA claim for trial. For this reason, the Court GRANTS Defendant's request for summary judgment as to all claims and hereby DISMISSES this case with prejudice.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: October 14th, 2005.

Marsha J. Pechman
United States District Judge

ORDER GRANTING SUMMARY JUDGMENT- 11